Good morning, may it please the Court, Eric L. Walter on behalf of the Plaintiff Charles Andrews Sr. I would like to reserve 3 minutes for rebuttal. I open also with it's a pleasure and honor to be before your honors this morning. Before you is a case that started out in the Lake County Court of Common Pleas. It dealt with a power of attorney. It was a state power of attorney that was signed and notarized and the case somehow went off into a direction that never really addressed the power of attorney and I'll get to that aspect. Attempts were made to resolve this prior to filing. This case is about whether it ought to be mediated or arbitrated, right? That's one of the main issues, your honor. Why shouldn't it be? Your honor, because Mr. Andrews Sr. had a power of attorney and if you look at the appellee's evidence, the affidavit that was submitted by them, you clearly see one month prior to any alleged revocation of this power of attorney, the revocation was made. But didn't they send you a form that is the Ameritrade, didn't they send you a form that said, we understand you, the client here wants to revoke, but you've got to fill out this form and give us all the background information that we need so that we can comply with our responsibilities as a fiduciary under the law. And they never got anything back. Isn't that factually correct? There was an email sent that the compliance department felt that there was a trust agreement in Ohio statute as to trustees, which really has no pertinence in this case. They do have a fiduciary responsibility to the client. Well, if you read the appellee's brief, they argue they don't. They very specifically in their brief say they don't know anyone of fiduciary duty, your honor. Our position is... Whatever the law says about how you would and see why they might have a methodology that is, the defendant might have a methodology about how you go about revoking the agreement that they've got, right? Isn't that reasonable on their part to want to get to the bottom of why and what the circumstances are? No, what's reasonable is TD Ameritrade... They had a notarized power of attorney from Mr. Andrews, Jr. And what this was, was TD Ameritrade trying to protect itself because it envisioned what was happening. There was a father and son. Why shouldn't they try to protect themselves as well as to see whether their client was being treated correctly? Why shouldn't they go through a few jumps here just to see about that? Because they didn't send forms, your honor. What is attached is an email where they said, well, we're not sure about... So they didn't send the form? They sent an email that said, we dispute you need to fill out forms. So we never got into discovery in this case. There was never... But if they sent an email saying, you know, you need to fill out the form and there's no form attached, did your client then email back and say, send me the form? Or where's the form? Or how do I get the form? There's no discovery done in this case. We never even got... I'm not talking about discovery. I'm talking about simply replying to an email correspondence because it would seem to me it would be reasonable if somebody said, you know, you need to fill out a form, the form is attached and there's no attachment. The reasonable response would be to hit the reply button on the email and say, there is no form, send me a form, where do I get the form? That's a reasonable exchange under those circumstances. But the reaction was there was a state power of attorney and that was sent to them along with their trading authorization. And if you look at the trading authorization form, it specifically says it doesn't have anything to do with changes to the account only to trading of stocks and bonds. The power of attorney was a very crafted document because there are some issues with drug use in this case. It specifically mentioned on page 3 of it that the son gave up... There may have been a dispute between the father and the son at least at some point that may be fine now. I don't know, you know, who knows what the facts are. But it's obvious that the father and the son were not in the same, on the same wavelength for a while because the father thought the son was addicted to heroin, right? Correct, your honor. And so the father wanted to revoke the son's account with Meritrade and the son apparently didn't agree or something, right? Factually that is correct, your honor. However, but if you look at the evidence that was submitted, under the state power of attorney, the revocation was not effective until in writing. And this didn't happen until December by Pelley's own evidence. In a broader sense, there's some similarity between this case and the one we just had argued because fundamentally this case is about your wanting a federal court to resolve your client's entitlement to the account. And the question is whether we should be resolving those issues or whether they should be resolved in arbitration. I mean, it's not really... I mean, that's the preliminary question and then the rest of it follows. If the case isn't going to go to arbitration, then we would presumably perhaps wade in. But, you know, you first got to get yourself out of the... I mean, I understand there's the question about the request for injunctive relief, but I mean really fundamentally this is about who's going to resolve the issues as to your client's entitlement to this account. Well, that's why originally this was filed in the state court and the state court issued an injunction. This is a little ahead of the case you just heard where the judge granted a TRO that specifically talked about they couldn't disregard the state power of attorney. This arbitration clause, we feel there's no... it's really not about... there's never been evidence entered that this document that they allege the son had signed, there's never been a signed document, that allegedly puts him into an arbitration. There isn't a dispute over the account. There's a dispute over the power of attorney. The son and Ameritrade had signed an agreement in which disputes arising out of the transaction with regard to the account would be arbitrated. There's never been any evidence in this case that there was a signed document by TD Ameritrade or Mr. Andrews Jr. I mean, is this just a figment of somebody's imagination? Well, if you want an honest answer to this, we had the TRO in the state court and they chose to remove it to the district court because the TRO made a determination as to the validity of that power of attorney and it's important to add, the district court judge never addressed that. Because of amount and controversy being sufficient, right? And diversity. And diversity. And one of our arguments is, there is a principal office in Cincinnati, Hamilton County. That's not the Nerve Center though. There was never any evidence presented at the Nerve Center. I think we've kind of jumped around. I mean, the original question of this set of questions had to do, I thought, with whether the various agreements requiring arbitration were a figment of someone's imagination and I believe that they are in the record in connection with the request for injunctive relief and in that record. So, they're not a figment of someone's imagination. Your position is just that we shouldn't be worrying about those agreements because Ameritrade should have honored your client's request to liquidate the account and therefore we wouldn't be talking about arbitration and that you should have had the money and run. I mean, that's what it's about, really. And, you know, that can be decided in the context of the arbitration. But, you know, there's no question that the agreements that the Sun signed required the arbitration. Well, there was the trading authorization on the client agreement, which is a 20-some page document. There is a dispute on that. They're claiming that by opening the account, when Charles Jr. opened that, then all of a sudden it's deemed signed. There's never been evidence of that agreement. There's the trading authorization, which only allows trading of stocks and bonds. And more importantly, I think procedurally, that's cited in our brief. Let me ask you this. You are now denying that there is any arbitration agreement in the documents that were signed when the Sun became a client of the defendant. Is that what you're denying? We're denying that it's applicable in this case because there was a power of attorney. You're denying it exists, that this agreement exists, and that it includes an arbitration agreement. You agree to that, right? I agree that what our whole argument has been from day one was that... Correct, and if you look at Judge Gaughan's opinion, she specifically says that the power of attorney was revoked, and therefore the contractual documents come into effect. Look, if your client had never sought to liquidate the account, would he be contesting that there would be an arbitration requirement? No, what he's contesting is, on November 26th of 2013, he specifically asked, revoke this, based on the power of attorney, and then a month later is when this revocation occurred. There was no dispute. The dispute is, here's a power of attorney, and Judge Gaughan looked at that and said, oh, well, it was revoked, and her opinion never addressed that issue. Suppose that it's not necessarily revoked. Suppose that it's unclear whether it's in effect, but the issue is Ameritrade does not... You tried to, or your client tried to liquidate the account. He wanted all the money out of the account. He's mad because, I don't mean mad, I mean he's litigating, because Ameritrade refused to honor that request. Had he never made the request, your client and the power of attorney were in effect, would your client be required to arbitrate? My position on that would be, no, he would not, and I want to address why. One of the aspects is, by agreeing... He was not bound to anything that the person for whom he held the power of attorney had agreed to? No. My position is we had a TRO, and they stipulated in the district court to agreeing to that TRO to remain in effect. They then took an active role in this litigation. TD Ameritrade agreed... What does that have to do with the question I asked you? Well, then they're waiving. If you're going to stick on this arbitration clause... Well, wait a minute. That's not what I asked you. I mean, I know your time is up, but what I ask you is whether you would have to arbitrate if you had never tried to get all the money out. And if there is... I mean, maybe there wouldn't be a dispute if you'd never tried to get all the money out, but, I mean, but let's... Assuming a different dispute had arisen, would you have been required to arbitrate that dispute? If there was a dispute on the account, here, it's a very narrow issue. There's no dispute on the account. There's a dispute... So the answer is yes. You would have been required to arbitrate limited to the terms of whatever the agreement was, right? If there is a dispute over the account itself, potentially we would still argue that the state power of attorney trumps that document. Okay. Did you tell us how much time you wanted to reserve? Pardon me? Okay. Good morning, Your Honors. Barbara Yaksik for TD Ameritrade. Let me start out by asking you, does the fact that TD Ameritrade did not give notice to Mr. Andrews Sr. regarding the documents needed to change ownership of the trust account, does that defeat Ameritrade's defense that it didn't receive additional documentation? First of all, I would dispute that fact. I would also point out that... Which of those facts? What facts? That they didn't get the documents, the forms. Are you disputing the fact that they alleged that they didn't get the forms? No. That's what they alleged. Right. I'm disputing the accuracy of that allegation. However, in keeping in mind, as Your Honors pointed out, the key issue is whether this case should be arbitrated, and the merits of any particular claim or defense are irrelevant to whether a case should be arbitrated. You determine under the four factors, is there an arbitration agreement, the scope, et cetera, and then if it's determined who makes a decision on the merits, then it proceeds there. There is a document here that was, in fact, signed by both Andrews. It's the trade authorization agreement. Before you go there, the first part of the question was regarding the notice that Ameritrade did or did not give to Andrews Sr. So are you saying that T.D. Ameritrade did, in fact, give Andrews Sr. notice? There was notification, yes, that additional documentation... Wait a minute, wait a minute, wait a minute. That's not what Judge Donald is asking. I believe that what the record shows, and you tell me if this is right or wrong, that Ameritrade did not, in fact, and maybe they weren't obligated to and maybe it would have been imprudent to, but the fact of the matter is Ameritrade did not go back to Mr. Andrews Sr. after it received from him the power of attorney. It went to the account holder, Mr. Andrews Jr. That's the first part of the question. I apologize. I misunderstood what your question was, but that is how communications on the account are set up, and if Mr. Andrews Sr. had sent the information in, he would have had access to that private e-mail communication, so he could have accessed that account. We have a dispute here, as Your Honor has pointed out, between a father and a son. We have a father and his attorney saying, I need this money, I need this money, give it to me, liquidate the account. We have the son, the original account holder, telling us, don't give the money to my father. I'm going to go to the police. And so my question to you was, you know, whether it's Ameritrade's policy or otherwise, and because of the way the account is set up, since Ameritrade admittedly provided no notice to Andrews Sr., what does that do to Ameritrade's defense that, oh, we didn't receive the documentation, so, you know, we're off the hook? Again, I would point out that since the issue is arbitrability, the merits of a particular defense are irrelevant at this point. I would also point out that the power of attorney submitted was not proper under Ohio law. I would also like to address the scope issue. Mr. Walter keeps saying, we're not talking about the account, we're talking about the power of attorney. I submit that's a distinction without a difference, or a difference without a distinction, whatever the cliche is, because what is the purpose of the power of attorney? Either to liquidate the account in its entirety, which was originally what was requested, or what's being posited today, to trade the assets in the account. What is at issue here is the account. And the arbitration clause in the client agreement and in the trading authorization agreement specifically says, I agree that any controversy between the parties, you being TD Ameritrade and me being Mr. Andrews Sr., including any of my officers, directors, employees, or agents arising out of or relating to this agreement, our relationship, any services provided, or the use of the services, shall be arbitrated. That's in the client agreement. There is an arbitration clause in both the trading agreement and the client agreement. Yes, because the trading agreement specifically says in the very first paragraph, the last sentence, the client agreement set forth in the account agreement, including arbitration of disputes, shall apply equally to the authorized agent. That's in page 43 of the record, I believe. And then if you look at the second page of the trading agreement, it's signed by Mr. Andrews Sr. What you're really saying is any way you shake this case, there is a provision in the agreement that any dispute between the parties should be arbitrated. Yes. And how did Mr. Andrews Sr. come to sign the trading agreement, or whatever it was you just said he signed? He wanted to get access to the account, so it was signed. I was not there. I don't know. I mean, was it signed when the account was opened? No, it was signed, I believe, maybe 15 months later. Was it after the power of attorney was signed? Yes. So at some point, he personally, you would argue, agreed to the arbitration whether or not he was an original signatory and whether or not he had prior to that attempted to liquidate the account. Yes, Your Honor. Even if he had never signed any of the documents, we would argue that he would still be bound by the arbitration clause because he's trying to get the benefit of the account, and the account is governed by two documents now. But as a matter of fact, the after the fact signed the document. Yes. It's hard to tell from the signature, and I'm no handwriting expert, but there are signatures there, and it was submitted by Mr. Andrews. Well, I guess Mr. Walter can tell us if there's a dispute about that, but is it your understanding that Mr. Andrews Sr. disputes his signature on the document? I don't think we ever got to that, Your Honor. Our position is it's either his signature or if it's not his signature, since he's trying to access the funds in the account, either to liquidate them or trade them, he's still bound by the governing agreements. I would also point out, as Judge Merritt in the Dawson decision back in 2012 and Judge Goodman in the answers in Genesis have remarked on the strong pro-arbitration policy of the courts and that any doubts should be construed in favor of arbitration and that only the most forceful of evidence of intent to exclude a claim from arbitration shall have that effect. Again, that was your decision, Judge, in answers in Genesis. Briefly turning to the allegation that we stipulated to an extension of the TRO, that was only for a short period of time to allow briefing. On the remand issue, while TD Ameritrade does have an office here in Ohio under governing law, it's where the principal place of business is. And as Judge Gibbons noted in your Century Business decision, you can only have one principal place of business. If you look at the document that Mr. Andrews Sr. submitted, it's the Ohio, the documents he filed to have an office in Ohio, it says, yeah, there's an Ohio office in Cincinnati, but it specifically says its principal place of business is in Nebraska and there was an affidavit, actually two affidavits, submitted in the court below. So there was evidence as to that. So for the reasons that we have discussed and set forth in our brief, unless you have any questions on any of the other issues raised, we would ask that all of the decisions below be affirmed. Thank you, Your Honors. Very briefly, I have to correct one statement. Thank you, I saw four, I wanted three. One statement, she said it was just to brief it. In the record, the order entered on 12-30-13 wasn't for briefing. It said by agreement of the parties, a temporary restraining order issued on December 16th by the Lake County Court of Common Pleas will be extended to January 6th. One of the terms of that order was that the power of attorney is valid. Now going to the issue of Agreeing that something will remain in effect does not, in fact, in my experience, mean that you have agreed to all the bases underlying the TRO. I mean, it happens all the time. Parties agree that a TRO can remain in effect and they do it so they can get ready for whatever reason. It doesn't matter too much, but in any event, they're not agreeing to the underlying findings if there's litigation that's going to be ongoing concerning whether the TRO or whether an injunction should be issued. I've just never heard anybody espouse that point of view. Well, to address that, they Is there something in this order that leads you to believe that? Well, what leads me factually to that and procedurally is we had the TRO in Lake County and they removed it because a hearing was coming up and you bring up a valid point that we never had a hearing on the TRO that was converted into a preliminary injunction. A decision was made on that because now the account's locked. No one, when this lawsuit was filed, no one had access to the account because they even locked the son out of it. But I want to address the trading authorization. It states, and you bring up a very valid point, Mr. Andrews Sr. was never provided the actual client agreement ever until litigation. There was never notice of that. And it says there's, it talks about the claim. Can I ask for it? That's never been in the evidence, Your Honor. I cannot answer that question because we never got to that evidentiary side. Well, anyway, what's your point? But if you look at the last page, and this is an issue that has come up with this client agreement that we were provided during litigation, it says the agreement to arbitrate does not constitute a waiver of any right provided by me, the advisors, under the Advisors Act, including the right to choose the forum, whether arbitration or adjudication, in which to seek resolution of disputes. There's an addendum in the client agreement, and we've never gotten to that issue, that says under the Advisors Act you can still choose your forum. What's your point? The point is arbitration is not proper here because you validly point out that Mr. Andrews was never given this documentation. He was never provided forums to change the public attorney. No, I mean, as far as a merit rate is concerned, the counterargument to that would be, which I'd like to know if you have a response to very briefly, would be that the power of attorney was not yet, in the eyes of merit rate, effective to transfer control of the account. So obviously it was going to continue not to communicate, it was not going to communicate with the person purportedly holding the power of attorney, but rather with the account holder in order to further ensure that there had been a valid execution of the power of attorney. To address that question very briefly, no attorney ever looked at that. It was some compliance person who worked at TD Ameritrade. And that's in the record, but does it matter anyway? It does matter because then all of a sudden, once this lawsuit went, they didn't rely on the power of attorney. Their position changed from the beginning to the end. Well, it really doesn't matter about the validity. I'm not sure this is going to the question of whether at that point Ameritrade had an obligation to be dealing with your client. They did have an obligation. Well, I think we're done unless my colleagues have further questions. Thank you very much for your time. We appreciate the argument both of you have given, and we'll consider the case carefully. Thank you.